UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 03-2609(DSD/SRN)


RBC Dain Rauscher, Inc., a
Minnesota corporation, f/k/a
Dain Rauscher Incorporated,

        Plaintiff,

v.                                                                **ORDER**

Federal Insurance Company, an
Indiana corporation, and
Travelers Casualty and Surety
Company of America, a Connecticut
corporation,

        Defendants.


    Timothy D. Kelly, Esq., John D. Bessler, Esq., Daniel C.
Bryden, Esq. and Kelly & Berens, 3720 IDS Center, 80
South Eighth Street, Minneapolis, MN 55401, counsel for
plaintiff.

    Russell S. Ponessa, Esq., Brian L. Lindberg, Esq., Mark
T. Berhow and Hinshaw & Culbertson, 222 South Ninth
Street, Suite 3100, Minneapolis, MN 55402 and Donald L.
Mrozek, Esq., Renee P. O'Neill, Esq. and Hinshaw &
Culbertson, 222 LaSalle Street North, Suite 300, Chicago,
IL 60601, counsel for defendants.


    This matter is before the court upon the parties' cross
motions for summary judgment. Based upon a review of the file,
record and proceedings herein, the court grants plaintiff's motion
in part, denies plaintiff's motion in part and denies defendants'
motion.

**BACKGROUND**

This is an action on a fidelity bond.  Plaintiff RBC Dain Rauscher, Inc., ("RBC Dain") the assured, is a securities broker holding customer assets of more than $108 billion.  Defendants Federal Insurance Company and Travelers Casualty and Surety Company of America (collectively "Federal") is RBC Dain's fidelity insurer. In 1998, Andrew Gaston joined RBC Dain as a registered representative.  Gaston brought with him clients Robert Fowler and Government Computer Sales, Inc. ("GCSI").  Fowler and his family owned a majority interest in GCSI.

GCSI borrowed up to $20 million dollars from Finova Capital Corporation ("Finova").  To provide collateral, GCSI, Fowler and several members of the Fowler family pledged the assets contained in certain RBC Dain accounts.  The parties, including RBC Dain, executed written pledge agreements to memorialize the collateral arrangement.  Under the agreements, the account holders were free to make trades within the pledged accounts.  Any withdrawals, however, required the permission of Finova.  Finova also had the power to order RBC Dain to freeze or liquidate the pledged accounts in the event of a default by GCSI.

By early 2000, GCSI's financial condition deteriorated, and Fowler concocted a scheme to remove funds from the pledged accounts.  Fowler acquired an off-shore "bank" that owned no assets and changed its name to Baltic Bank.  Fowler then ordered Gaston to

2

sell all the securities contained in four pledged accounts. In April 2000, Baltic Bank mailed a letter to Gaston, enclosing photocopies of "certificates of deposit" ("CDs") purportedly purchased from Baltic Bank by GCSI. The letter requested RBC Dain to wire cash to Baltic Bank as payment for the CDs. On April 18, 2000, Gaston directed RBC Dain employee Karen Olsen to fax wire instructions to RBC Dain's headquarters. Gaston had no authorization from Finova to initiate a wire transfer. Two days later, RBC Dain wired $6.19 million to Baltic Bank. Gaston asserts that, at the time of the wire transfer, he had no reason to suspect that the transaction was irregular.

Afterward, however, Gaston engaged in certain behavior that had the effect of concealing from RBC Dain and Finova that Finova's collateral may have been lost. Among other things, Gaston altered e-mails between himself and Finova, created phony account statements and failed to disclose his eventual discovery that Fowler controlled Baltic Bank.[1] By March 2001, GCSI had defaulted on its loan obligations after several extensions, and Finova requested current information about the pledged accounts. Gaston responded with portfolio statements which reflected assets of $11.535 million, consisting entirely of Baltic Bank CDs. Finova then asked that the accounts be liquidated and that it be given the

---

[1] The parties dispute when Gaston first knew that Fowler was the man behind the curtain at Baltic Bank. It is undisputed, however, that Gaston knew by July 2000.

3

proceeds.  Predictably, Baltic Bank failed to redeem its CDs, and Finova was therefore unable to recover its collateral.  Gradually, Fowler's scheme was brought to light.  RBC Dain fired Gaston in May 2001.

Finova sued RBC Dain in March 2002, alleging claims including breach of contract, misrepresentation and fraud, violation of securities laws and negligent supervision.  RBC Dain eventually settled the Finova action for $7 million.  In June 2002, RBC Dain filed a proof of claim with Federal under the terms of its fidelity bond based on Gaston's actions in connection with the pledged accounts.  Among other things, the bond covers:

> Loss resulting directly from dishonest acts ... of any Employee, committed alone or in collusion with others ... which result in improper personal financial gain to either such Employee or other natural person acting in collusion with such Employee, or which acts were committed with the intent to cause the ASSURED to sustain such loss.

(Bond at 1.)  Federal denied the claim, and this lawsuit followed. Both parties now move for summary judgment.


## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) **(quoting Fed. R. Civ. P. 56(c)).** A fact is material only when its resolution affects the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  <u>See id.</u> at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. <u>See id.</u> at 255.  The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  <u>See Celotex</u>, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  <u>Id.</u> at 322-23.  Judgment may be rendered with respect to all or any part of a particular claim or defense.  <u>See</u> Fed. R. Civ. P. 56(b).

## II.   Coverage Issue

RBC Dain has produced evidence that Gaston, in collusion with Fowler, dishonestly initiated the wire transfer to deprive Finova of the collateral which RBC Dain agreed to safeguard in its possession.  Federal, in response, has produced some evidence that Gaston was Fowler's dupe and that Gaston's dishonesty did not begin until the money was gone and Gaston realized he had been had. Whether Gaston acted honestly or dishonestly in initiating the wire transfer presents a question of material fact.  Citizens' State Bank of St. Paul v. New Amsterdam Cas. Co., 224 N.W. 451 (Minn. 1929).  Because that fact is the subject of genuine dispute, both parties motions for summary judgment on coverage must be denied.

## III. Defenses to Coverage

### A.   Indirect or Consequential Loss

RBC Dain seeks summary judgment on several defenses asserted by Federal.  First, Federal argues that RBC Dain did not suffer a loss when Gaston initiated the wire transfer to Baltic Bank. Rather, Federal contends that RBC Dain's loss did not occur until it settled the Finova lawsuit some three years later.  Therefore, Federal concludes that RBC Dain's loss falls within the bond's exclusion of "loss resulting from indirect or consequential loss of any nature."  (Bond at 12.)

The court must reject Federal's argument.  "The term 'loss' within a banker's blanket bond refers to a condition in which the

6

insured would be subjected to a claim or demand out of which a legal liability might arise, and not to an adjudicated liability; 'loss' thus occurs at the time of the activity giving rise to the claim against the insured and not at the time of trial proceedings or entry of a judgment." Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 160:61 (3d ed. 1998) (citing Fid. Sav. & Loan Ass'n v. Republic Ins. Co., 513 F.2d 954 (9th Cir. 1975)). Before April 20, 2000, RBC Dain possessed $6.19 million, held for the benefit of Finova under the collateral agreement. On April 20, RBC Dain wired that money to Baltic Bank on Gaston's instructions. The very instant that money was transferred RBC Dain became potentially liable to Finova for having lost the collateral.[2] Therefore, RBC Dain suffered its loss on April 20, 2000, approximately two days after Gaston issued his allegedly dishonest instructions. The passage of two days is insufficient to render the loss indirect. Accordingly, RBC Dain is entitled to summary judgment on Federal's indirect loss defense.[3]

---

[2] Federal makes much of the fact that GCSI, not Finova, held title to the funds in the RBC Dain account at the time of the wire transfer. Title is a non sequitur in these circumstances. Federal cannot dispute that the collateral agreement imposed a duty upon RBC Dain to possess the funds for Finova's benefit and that RBC Dain immediately faced potential liability for delivering the funds into Fowler's control. See also infra n.3.

[3] Cargill, Inc. v. National Union Fire Insurance Co. of Pittsburgh, 2004 WL 51671, at *11 (Minn. Ct. App. 2004), so strenuously relied upon by Federal, actually supports RBC Dain's position. In Cargill, Cargill became liable to third parties as
(continued...)

## B.   Misrepresentation or Advice Exclusion

Federal next argues that RBC Dain's loss is excluded from coverage because it resulted from "representation or advice." (Bond at 13.)  Federal points to language in Finova's first amended complaint regarding false representations alleged to have been made by RBC Dain.   Federal's argument, however, is based on a misconception of the timing and nature of RBC Dain's direct loss. The loss occurred immediately as a result of the wire transfer requested by Gaston.   The loss was not contingent upon Finova's eventual lawsuit.   Moreover, the damages Finova could have recovered in its lawsuit might have included amounts above and beyond the value of its collateral.   Therefore, the particular allegations contained in Finova's complaint are immaterial to RBC Dain's direct loss and its cause.   Accordingly, RBC Dain is entitled to summary judgment on Federal's misrepresentation defense.

---

[3](...continued)
the result its employees' theft and use of intellectual property belonging to another company.  See id.  Cargill then sought recovery from its fidelity insurer.  See id.  However, Cargill's claim was based not on "loss of third-party property in its possession," as RBC Dain's claim is, but rather on "theft committed against third-parties by its employees."  Id. at *13.  The Cargill court, unlike Federal, grasped the crucial difference, observing that the former is covered by fidelity insurance while the latter is not.  Id. at *13.

### C.   Customer Account Transaction Exclusion

Federal argues that RBC Dain's loss is excluded from coverage as "resulting from transactions in a customer's account." (Bond at 13.) Specifically, the bond excludes coverage of "[l]oss resulting from transactions in a customer's account, whether authorized or unauthorized, except loss resulting from the unlawful withdrawal and conversion of Money, Securities, or precious metals directly from a customer's account...." (Id. at 13.) The court finds that genuine issues of material fact preclude summary judgment as to the application of this exclusion.

### D.   Independent Causation/Comparative Negligence

Federal contends that RBC Dain is precluded from recovering under the bond because its loss was caused by RBC Dain's negligence in carrying out Gaston's request for the wire transfer. In support of its defense, Federal cites two Minnesota cases that have nothing whatsoever to do with the case at bar.

First, Federal quotes National City Bank of Minneapolis v. St. Paul Fire & Marine Insurance Co., 447 N.W.2d 171, 177 (Minn. 1989), for the proposition that "'failure to follow sound business practices ... is a business risk taken by banks and not an insured risk covered by the bond.'" (Defs.' Mem. Law Opp'n Pl.'s Mot. Summ. J. at 31 (ellipsis in original).) The quotation, however, is misleading. Correctly quoted, the National City Bank court held that "[t]he failure to follow sound business practices *and verify*

*authenticity* is a business risk taken by banks and not an insured risk covered by the Bond."   447 N.W.2d at 177 (emphasis added). The court reached that conclusion because the "Bond" at issue contained a provision that prevented the insured from recovering a loss caused by reliance on counterfeit stock certificates unless the insured had "[a]ctual physical possession" of the certificates. Id. at 174.   The purpose of the actual possession clause was to "allow an insured bank the opportunity to examine a document and to contact others to verify a document's authenticity." Id. at 177. Thus the National City Bank court held that, where the plaintiff bank did not have possession of the certificates on which it had relied, the "Bond" allocated the risk of counterfeiting to the bank.

Thus properly understood, the National City Bank court's conclusion regarding allocation of risk was not compelled by generally applicable Minnesota law.   To the contrary, it was derived from an express condition in the insuring agreement before it.   In this case, Federal fails to point to any language from the bond which allocates the risk of negligence to RBC Dain. Therefore, National City Bank is inapposite.

Federal next attempts to draw support from Village of Plummer v. Anchor Casualty Co., 61 N.W.2d 225 (Minn. 1953).   In Village of Plummer, the Village sought recovery on a fidelity bond after it allegedly suffered a loss of money and liquor from its municipal

liquor store.  Id. at 226.  The Village tried the case on the
theory that the loss resulted from the dishonest acts of one
Bailey, who it employed as manager of the store for several months.
Id. at 226.  In upholding a jury verdict for the insurer, the court
noted evidence produced by the insurer that the loss could have
occurred through bookkeeping and inventory errors and the
plaintiff's concomitant failure to produce "any direct evidence ...
showing that Bailey had misappropriated money or liquor."  Id. at
227.

Although the Village of Plummer court noted that "the loss
could be attributable to negligent operation and management," its
observation does not support a general defense of intervening
negligence in fidelity bond cases.  Rather, the court recognized
that the evidence adduced at trial left the jury to speculate as to
whether the alleged loss was an actual loss or simply a failure of
accounting.  In this case, however, there is no mystery regarding
if and how the actual loss of cash occurred: Gaston requested a
wire transfer of $6.19 million, and the request was fulfilled.
Therefore, Village of Plummer does not apply.

Ample authority supports the conclusion that, in the absence
of policy language to the contrary, mere negligence of the insured
does not defeat coverage under a fidelity bond.  See Lassetter v.
Becker, 224 P. 810, 812 (Ariz. 1924); Dixie Nat'l Bank of Dade
County v. Employers Commercial Union Ins. Co., 463 So.2d 1147, 1152

(Fla. 1985); <u>First Nat. Bank of Crandon v. U.S. Fid. & Guar. Co. of Baltimore</u>, 137 N.W. 742, 745 (Wis. 1912).  <u>See generally</u> Lee R. Russ & Thomas F. Segalla, <u>Couch on Insurance</u> § 162:11 (3d ed. 1998).  Therefore, RBC Dain is entitled to summary judgment on Federal's independent causation defense.

**E.   Ratification**

RBC Dain moves for summary judgment on Federal's defense of ratification.  Federal argues that Mike McQuaid, acting branch supervisor, "told Gaston and Olsen not to receive offshore CDs from Andy Gaston's client," but then later reviewed and approved the $6.19 million wire transfer.  Thus, Federal contends that RBC Dain, through McQuaid and Olsen, ratified Gaston's dishonest conduct.

Federal, however, has produced insufficient evidence to create a genuine issue of material fact regarding whether RBC Dain knew enough about the wire transfer to conclude that it was dishonest. The lack of such evidence is fatal to the ratification defense. <u>See</u> <u>Fid. & Deposit Co. of Md. v. Bates</u>, 76 F.2d 160, 167 (8th Cir. 1935) (no ratification where directors ignorant regarding employee's dishonesty); <u>U.S. Fid. & Guar. Co. v. Citizens' State Bank of Moorhead</u>, 116 So. 605, 608 (Miss. 1928) (ratification requires knowledge of all material facts).  <u>See generally</u> Lee R. Russ & Thomas F. Segalla, <u>Couch on Insurance</u> § 162:14 (3d ed. 1998).  RBC Dain is thus entitled to summary judgment on that issue.

**F.    Setoff/Mitigation of Damages**

Although RBC Dain requested summary judgment on Federal's request for a setoff, both it and Federal devoted little attention to the subject.  Therefore, the court denies RBC Dain's motion on the ground that it has not sufficiently demonstrated that it is entitled to judgment as a matter of law.


**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendants' motion for summary judgment [Doc. No. 45] is denied.

2.    Plaintiff's motion for summary judgment [Doc. No. 50] is granted in part and denied in part.

Dated:  May 10, 2005

                              s/David S. Doty
                              David S. Doty, Judge
                              United States District Court

13